UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------X
FEDERAL INSURANCE COMPANY, and
STARK CARPET CORP. INC.,

       Plaintiffs,               <u>MEMORANDUM AND ORDER</u>

   -against-                 Civil Action No.
                                   09-CV-2739 (DGT)
BAX GLOBAL INC. and MAINFREIGHT, INC.,

       Defendants.
------------------------------------X

MAINFREIGHT, INC.,

       Third-Party Plaintiff,

   -against-

BETTY SCRIPPS and NOW EXPRESS
CARTAGE, INC.,

       Third-Party Defendants.
------------------------------------X

Trager, J.:

    This action arises from a shipment of twenty-four rolls of

carpet, which were damaged while en route from Rancho Santa Fe,

California to Calhoun, Georgia.  Federal Insurance Company

("F.I.C.") and Stark Carpet Corp. Inc. ("Stark Carpet")

(collectively "plaintiffs") bring this action against cargo

transporters Mainfreight, Inc. ("Mainfreight") and Bax Global,

Inc. ("Bax") (collectively "defendants"), alleging a violation

of the Carmack Amendment to the Interstate Commerce Act, 49

U.S.C. § 14706, as well as various common law claims.[1]

Plaintiffs seek $80,606.31 in damages.  Pls.' Compl. ¶ 6.

Defendants move to transfer venue to the Southern District of California pursuant to 28 U.S.C. § 1404(a).  For the reasons stated below, defendants' motion to transfer is granted.

## Background

### (1)

### The Carpet Shipment

Betty Scripps ("Scripps"),[2] who resides in Rancho Santa Fe, California, bought twenty-four rolls of carpet from plaintiff Stark Carpet, a Manhattan-based carpet dealer.[3]  Pls.' Decl. in Opp'n to Defs. Mot. to Transfer ("Pls.' Decl. in Opp'n") at ¶¶ 8, 22.  These carpets were custom-made for Scripps' home by

---

[1] These claims include, inter alia, negligence, deviation, tort, tortious interference with contract, breach of warranty and contract, and conversion.  Pls.' Compl. ¶ 4.

[2] On September 3, 2009, Mainfreight filed a third-party complaint against Scripps and Now Express Cartage, Inc.  See Am. Third Party Compl. Against Betty Scripps and Now Express Cartage, Inc. ("Third Party Compl.").  Scripps and Now Express have not filed any papers on the instant venue motion, nor have they answered the complaint.

[3] Stark Carpet is incorporated in New York State and has a Manhattan, New York service address.  Pls. Ex. 5.  Plaintiff F.I.C. insured the carpet shipment at issue here and brings this action as subrogee of Stark Carpet.  See Compl. ¶ 2.  According to the record, plaintiff F.I.C. "is located" in Manhattan, New York as well.  Pls. Decl. in Opp'n at ¶ 8.

non-party Glen Eden Wool Carpets ("Glen Eden"), a carpet manufacturer based in Calhoun, Georgia.  Id. at ¶¶ 9, 22.  On or about June 25, 2008, Scripps notified Stark Carpet that she wanted to return the carpets because of a "manufacturing deficiency."  Pls.' Exs. 6, 14.  However, the precise nature of this "deficiency" remains unclear.

On or about June 30, 2008, Stark Carpet arranged to ship the carpets from Scripps to Glen Eden through non-party ICC Logistics Services ("ICC"), a transportation and logistics consulting firm based in Hicksville, New York.  Pls.' Decl. in Opp'n ¶ 9.  ICC Chief Executive Officer Anthony Nuzio ("Nuzio") and his assistant Pat Kober ("Kober") booked Scripps' return shipment with defendant Mainfreight, an international transportation and logistics company.  Id. at ¶ 2; Pls.' Ex. 6.

At some point soon thereafter, the carpets were picked up at Scripps' residence and loaded onto a truck by Scripps' contact person, Bob Clapp ("Clapp"), Scripps' forklift driver and an employee from Now Express Cartage, Inc. ("Now Express"), a local hauling company.[4]  Mainfreight Mem. of Points and Authorities in Supp. Mot. to Transfer Case Pursuant to 28 U.S.C.

---

[4] Although it is unclear from the record, it appears that Mainfreight hired Now Express to transport the carpets from Scripps' home to Mainfreight's warehouse in San Diego, California.  See Decl. of William Rose in Supp. Mot. to Transfer Case Pursuant to 28 U.S.C. 1404(a) ("Rose Decl.") at 2.

1404(a) ("Mainfreight Mem. in Supp.") at 2; Decl. Matthew T. Loesberg in Supp. Mot. Transfer ("Loesberg Decl.") at ¶ 2.  Now Express then transported the carpets from Scripps' home in Rancho Santa Fe to Mainfreight's warehouse in San Diego, California.  Rose Decl. at 1.  The carpets arrived on or about July 3, 2008, and Mainfreight issued a clean bill of lading[5] for the shipment.[6]  Pls.' Decl. in Opp'n at ¶ 11; Def. Bax's Ex. 2.

Now Express then transported the carpets from Mainfreight's San Diego warehouse to the San Diego facilities of defendant Bax, an international transportation and logistics company subcontracted by Mainfreight for the shipment.  Pls.' Decl. in Opp'n at ¶ 25; Bax Reply in Opp'n to Pls.' Letter Mot. to Compel or Sanction Defs. at 1-2, Dec. 23, 2009, ECF No.32 ("Bax Reply in Opp'n to Mot. to Compel").  After receiving the carpets in its warehouse, Bax transported them from San Diego to Atlanta, Georgia.  Bax Reply in Opp'n to Mot. to Compel at 1-2.  Once in Atlanta, Georgia, a local hauler transported the carpets to Glen Eden in Calhoun, Georgia.  Id.

---

[5]  "A bill of lading records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage." Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 18-19 (2004).

[6]  It is unclear if the carpets were received by Mainfreight on the same day that the bill of lading was issued.  It is also unclear which Mainfreight employee filled out the bill of lading.

When the carpets were received by Glen Eden on July 11, 2008, they were severely damaged.  Pls.' Decl. in Opp'n at ¶ 11. According to a handwritten note on the bill of lading, dated July 11, 2008, the carpets were: "Dirty, some w/ holes[.] Pictures have been taken/has original packaging, never been open."[7]  Def. Bax's Ex. 2; see also Pls. Ex. 14 (photographs of the damaged carpets).

Glen Eden immediately notified Don Benis ("Benis"), a Stark Carpet employee, that the carpets were damaged.  Pls' Decl. in Opp'n at ¶ 12.  Benis then contacted Nuzio and Kober at ICC, the New York-based company that had originally booked the shipment with Mainfreight, to inform them of the damage.  Id.  At Stark Carpet's request, Kober began an investigation on July 14, 2008 to determine exactly when, where and how the damage occurred. Id. at ¶¶ 12-13.

It is unclear from the record exactly what this investigation entailed.  However, at the very least, this investigation included a series of inconclusive e-mails, faxes and letters, dated from July 2008 to November 2008, between the following people: Kober and Nuzio, both based in Hicksville, New York; Mainfreight employee Bob Andrews ("Andrews"), based in Greensboro, North Carolina; Mainfreight employee Ed Nowicki

---

[7] This note was written by "C. Wells" but there is no indication in the record as to who this is.  It is assumed that he or she was a Glen Eden employee.

("Nowicki"), based in Carolina Shores, North Carolina;
Mainfreight employee Joanne Charles ("Charles"), based in
Carson, California; Stark Carpet employee Rob Meistrich
("Meistrich"), based in New York, New York; and Stark Carpet
employee Benis, based in Dania Beach, Florida.  Pls. Exs. 7-15.

It seems that as part of this investigation, Kober
repeatedly attempted to get information from Mainfreight on the
shipment, specifically the documentation on each transfer point
from Rancho Santa Fe to Calhoun.  Pls.' Decl. in Opp'n at 15-18;
Pls' Exs. 10, 15.  On November 4, 2008, Mainfreight employee
Charles e-mailed Kober that she could not provide her with this
information but directed Kober to contact Mainfreight employees
Andrews and Nowicki, stating that "they may be in a better
position to provide this information."  Pls.' Ex. 13.  On
November 24, 2008, Andrews wrote to Kober that: "We are not able
to determine exactly where or when the damage occurred.  The
damage happened while the cargo was in the care of our carrier.
Please file the claim with our claim department and they will
take it from there."[8]  Pls.' Ex. 15.

---

[8] Although Andrews instructed Kober to file a claim in his
November 24, 2008 e-mail, it appears from the record that she
had already done so about a month earlier.  Notably, on October
24, 2008, Kober filed a claim with Mainfreight, which stated
that Mainfreight was responsible for $78,362 worth of damage to
the carpets.  Pls. Ex. 12.  However, on November 5, 2008,
Mainfreight rejected the claim, noting that "claims for lost or

In addition to the investigation performed by ICC, plaintiffs FIC and Stark Carpet hired Charles Williams, a Georgia-based surveyor, to assess the carpet damage at the Glen Eden factory in Calhoun, Georgia.  Pls' Decl. in Opp'n at ¶ 20. In a report dated November 25, 2008, Williams noted that the carpets could not be repaired because they were stained with grease and dock dirt and contained many cuts.  Pls.' Ex. 14. Williams also noted that the damage "was the result of careless and/or rough handling at sometime during the possession of Mainfreight, Inc."  Id.

### (2)

### Procedural History

Plaintiffs filed the instant action in the Southern District of New York on March 18, 2009, asserting a federal cause of action against plaintiffs under the Carmack Amendment, 49 U.S.C. § 14706.  On June 15, 2009, Judge Deborah A. Batts sua sponte transferred the case to the Eastern District of New York pursuant to 28 U.S.C. § 1404(a), finding that "the only connections between Plaintiffs' suit and the Southern District of New York [were] Plaintiffs' places of business."  Order by

---

damaged freight must be received by Mainfreight within 90 days from the date of shipment."  Id.

Judge Deborah A. Batts Transferring Venue, June 15, 2009, ECF
No. 8.  In further support of the <u>sua</u> <u>sponte</u> transfer, Judge
Batts noted that 1) both defendants were located outside of the
Southern District of New York; and 2) there was no reference in
the complaint to any events occurring in the Southern District
of New York.  <u>Id.</u>  According to Judge Batts, venue was proper in
the Eastern District of New York because Bax "may be found in
Jamaica, New York."[9]  <u>Id.</u>

This case was opened in the Eastern District on June 26,
2009.  On January 8, 2010, defendants filed a § 1404(a) motion
to transfer the case to the Southern District of California in
the interest of judicial efficiency and for the convenience of
parties and witnesses.[10]

**Discussion**

**(1)**

**Motion to Transfer Venue**

Section 1404(a) provides that "for the convenience of
parties and witnesses, in the interest of justice, a district

---

[9] Judge Batts was likely referencing the fact that the service
address listed for Bax was in Jamaica, New York.  <u>See</u> Pls.'
Decl. in Opp'n at ¶ 5.

[10]  The Southern District of California includes Imperial and San
Diego counties.  28 U.S.C. § 84(d).

court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).[11]  "The determination whether to grant a change of venue requires a balancing of conveniences, which is left to the sound discretion of the district court."  Filmline (Cross Country) Prods., Inc. v. United Artists Corp., 865 F.2d 513, 520 (2d Cir. 1989).

Courts in the Eastern District of New York have adopted a two-pronged inquiry for deciding whether to grant a § 1404(a) motion to transfer.  Launer v. Buena Vista Winery, Inc., 916 F. Supp. 204, 212 (E.D.N.Y. 1996). "The first inquiry is whether the action sought to be transferred is one that might have been brought in the district court in which the moving party seeks to have the case litigated."  Id. at 212-13.  The second inquiry

---

[11] Although defendants have moved pursuant to § 1404(a), which allows a court to transfer an action in the interests of convenience and justice, they repeatedly claim throughout their papers that New York is the improper venue for the instant action, rather than merely an inconvenient venue.  See, e.g., Mainfreight Mem. in Supp. at 2, 3; Reply Brief of Bax Global Inc. in Further Supp. of Mot. to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) ("Bax Reply Brief") at 1.  This is more consistent with a 28 U.S.C. § 1406(a) motion, which allows a court to dismiss or transfer an action brought in an improper venue.  Section 1404(a) differs from § 1406(a) in that venue does not need to be improper for § 1404(a) to apply.  However, because resolution of the transfer issue under § 1404(a) is dispositive in this case, it is unnecessary to determine whether transfer is also appropriate under § 1406(a).

asks "whether the 'convenience of the parties and witnesses' and
the 'interest of justice' favor transfer."  Id. at 213.  Factors
that may be considered in deciding this second prong include:

> (1) convenience of the parties; (2) convenience of
> witnesses; (3) relative means of the parties; (4) locus of
> operative facts and relative ease of access to sources of
> proof; (5) attendance of witnesses; (6) the weight accorded
> the plaintiff's choice of forum; (7) calendar congestion;
> (8) the desirability of having the case tried by the forum
> familiar with the substantive law to be applied; (9)
> practical difficulties; and finally, (10) the Court should
> also consider how best to serve the interest of justice,
> based on an assessment of the totality of material
> circumstances.

Photoactive Prods., Inc. v. AL-OR Int'l Ltd., 99 F. Supp. 2d
281, 291-92 (E.D.N.Y. 2000).  However, "[t]here is no rigid
formula for balancing these factors and no single one of them is
determinative."  Citigroup, Inc. v. City Holding Co., 97 F.
Supp. 2d 549, 561 (S.D.N.Y. 2000).  The moving party bears the
burden to make a clear and convincing showing that a transfer is
appropriate.  N.Y. Marine and Gen. Ins. Co. v. Lafarge N. Am.,
599 F.3d 102, 114 (2d Cir. 2010).


### a.   This Action Could Have Been Brought in the Southern District of California

Applying the first prong of the § 1404(a) inquiry, this
action could have been brought in the Southern District of
California.  Specifically, under the Carmack Amendment's special
venue provision, venue is proper in California.

Before addressing the venue issue, however, some background on the Carmack Amendment is necessary.  The Carmack Amendment imposes liability on common carriers for damages and losses to goods caused by the carrier in interstate shipment.  49 U.S.C. § 14706(a)(1).  "The purpose of the Carmack Amendment was to relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods."  Reider v. Thompson, 339 U.S. 113, 119 (1950).  Under the Carmack Amendment, the shipper, or "the person entitled to recovery under the bill of lading," can bring suit "for the actual loss or injury to the property caused by . . . the delivering carrier . . . ."  49 U.S.C. § 14706(a)(1).[12]  The statute defines the "delivering carrier" as "the carrier performing the line-haul transportation nearest the destination but does not include a carrier providing only a switching service at the destination."  Id.

The Carmack Amendment has a special venue provision, § 14706(d)(1), that expressly governs any action brought under the Carmack Amendment.  Sompo Japan Ins. Co. of Am. v. Yang Ming

---

[12] It is assumed that the shipment at issue here was performed via motor carrier, given that the parties repeatedly cite to § 14706(a)(1), the motor carrier liability provision of the Carmack Amendment.  Indeed, in a letter filed by Mainfreight on November 17, 2009, Mainfreight conceded "that there was no air carriage involved in respect to the subject shipment." Mainfreight Letter in Reply to Pls.' Mot. for Pre-Mot. Conference, Nov. 17, 2009, ECF 28.

11

Marine Transp. Corp., 578 F. Supp. 2d 584, 595 (S.D.N.Y. 2008), overruled on other grounds by Rexroth Hydraudyne B.V. v. Ocean World Lines, Inc., 547 F.3d 351, 361 (2d Cir. 2008); see also Meserole St. Recycling, Inc. v. CSX Transp., Inc., No. 06-CV-4652, 2007 WL 2891424 at *2 (E.D.N.Y. Sept. 28, 2007) ("Special venue provisions are typically attached to statutes providing substantive rights and are intended to control all claims brought under such statutes."). Subsection 14706(d)(1) states that "[a] civil action . . . may be brought against a delivering carrier in a district court of the United States . . . [if it] is in a State through which the defendant carrier operates." Thus, to establish venue pursuant to § 14706(d)(1), it must be determined who was the delivering carrier and where that delivering carrier "operates."

Here, the parties dispute whether Mainfreight or Bax was the delivering carrier. Plaintiffs and Mainfreight argue that both Mainfreight and Bax were the delivering carriers, but Bax claims that only Mainfreight can be characterized as such.[13] See Pls.' Mem. of Law in Opp'n to Defs. Mot to Transfer Pursuant to 28 U.S.C. § 1404(a) ("Pls.' Mem. in Opp'n") at 6; Def. Mainfreight's Reply to Pls.' Opp'n ("Mainfreight's Reply") at 2;

---

[13] According to the definition provided in § 14706(a)(1), it certainly seems that Bax was the "delivering carrier." However, because there is some dispute on this point among the parties, this opinion will address the issue as if it is unclear.

12

Bax Reply Brief at 2.  However, regardless of whether Mainfreight or Bax was the delivering carrier, the § 14706(d)(1) venue analysis would be the same.  Assuming that Mainfreight was the delivering carrier, venue would be proper in the Southern District of California because Mainfreight clearly "operates" there, as evidenced by the fact that it maintains a warehouse in San Diego.  Similarly, assuming that Bax, and not Mainfreight, was the delivering carrier, venue would still be proper in the Southern District of California because Bax "operates" there, as is evident from the fact that it also maintains a warehouse in San Diego.[14]  Thus, either way, venue would be proper in the Southern District of California under § 14706(d)(1), and this action could have been brought there originally.[15]  Defendants, therefore, meet the first prong of the § 1404(a) inquiry.

---

[14] Plaintiffs argue that because Bax "operates" in Jamaica, New York, venue is proper in the Eastern District of New York under § 14706(d)(1).  This may indeed be the case.  However, because this is a § 1404(a) motion, it is only necessary to decide if venue would be proper in the Southern District of California, not whether venue is improper in the Eastern District of New York.  See supra n.11.

[15] The parties also invoke § 14706(d)(2) of the Carmack Amendment as a basis for determining venue in this case.  Under § 14706(d)(2), venue is proper "against the carrier alleged to have caused the loss or damage, in the judicial district in which such loss or damage is alleged to have occurred."  However, because it is clear that venue is proper in the Southern District of California under § 14706(d)(1), it is unnecessary to address the application of § 14706(d)(2).

**b. Convenience Factors Under a § 1404(a) Motion to Transfer**

The second step of the § 1404(a) inquiry includes a balancing of the ten convenience factors listed above.  The factors relevant to the instant motion will be addressed in turn.

**i.  Plaintiffs' Choice of Forum**

"Generally speaking, [a] plaintiff's choice of forum is entitled to substantial weight and will not be disturbed lightly."  Myers v. Lennar Corp., No. 08-CV-2799, 2010 WL 1992200, at *3 (E.D.N.Y. May 17, 2010) (internal citations omitted).  However, a plaintiff's choice is accorded less deference "where the plaintiff does not reside in the chosen forum or where there is little connection between that forum and the circumstances at issue in the litigation."  Quan v. Computer Sci. Corp., Nos. 06-CV-3927, 06-CV-5100, 2008 WL 89679, at *3 (E.D.N.Y. Jan. 7, 2008).

Here, the Eastern District of New York does not reflect plaintiffs' choice of forum, as plaintiffs originally filed this action in the Southern District of New York.  Additionally, plaintiffs do not reside in this district.  Of course, while the Eastern District of New York was not plaintiffs' initial choice, it is certainly geographically closer to Manhattan than the Southern District of California.  See Habrout v. City of New

14

York, 143 F. Supp. 2d 399, 401 (S.D.N.Y. 2001) ("New York's
Southern District Courthouse . . .lies just across the East
River and just over the Brooklyn Bridge from the Eastern
District . . . ."). But even assuming that the Eastern District
of New York somehow reflects plaintiffs' choice of forum given
its proximity to the Southern District of New York, there is
still little connection between this district and the
circumstances at issue in this case. In particular, the carpets
travelled from Rancho Santa Fe, California to Calhoun, Georgia,
but never passed through New York.

In an effort to demonstrate that there is a connection
between this district and the instant action, plaintiffs point
to the fact that Scripps originally ordered the carpets from
Stark Carpet's New York office. However, this action concerns
the later damage to the carpets, not Scripps' original carpet
order. Therefore, plaintiffs' choice of forum is not accorded
significant weight.

## ii. Convenience and Attendance of the Witnesses

"The convenience of the witnesses is probably the single
most important factor in the transfer analysis." Neil Bros.
Ltd. v. World Wide Lines, Inc., 425 F. Supp. 2d 325, 329
(E.D.N.Y. 2006). "When assessing the convenience of witnesses,
a court does not merely tally the number of witnesses who reside

15

in the current forum in comparison to the number located in the proposed transferee forum.  Instead, the court must qualitatively evaluate the <u>materiality</u> of the testimony that the witnesses may provide." <u>Herbert Ltd. P'ship v. Elec. Arts Inc.</u>, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004) (emphasis added). Thus, to assess this factor here, it is necessary to first determine which witnesses might offer material testimony.

The central issue of this litigation concerns when and where the carpets were damaged — more specifically, whether the damage occurred prior to or during the pick-up at Scripps' home or subsequently as the carpets were transported across California and then to Georgia.  The witnesses who can possibly answer this material question are located in California and include: (1) Scripps, who can shed light on the condition of the carpets at the time she received and returned them; (2) Scripps' assistant Clapp and her forklift driver, who can testify on the procedures they used to load the carpets on to the truck at Scripps' home; (3) the Now Express driver, who picked up the carpets from Scripps' home and drove them to Mainfreight's San Diego warehouse, and can testify on the loading procedures at Scripps' home and the receiving procedures at Mainfreight's warehouse; and (4) the Bax employees, who received the carpets in their San Diego warehouse prior to transporting them to Atlanta.

Additionally, Rose, the Night Manager at Mainfreight's San Diego warehouse, may serve as an important witness.  At the very least, as the manager, Rose has knowledge of the general receiving and inspection procedures that were likely conducted upon the arrival of the carpets at the Mainfreight warehouse. Furthermore, he has stated that he is "personally familiar" with this particular shipment and may therefore provide more specific information in his testimony.[16]  Rose Decl. at 1.

Plaintiffs argue that these California-based witnesses are not actually material because the damage occurred after these witnesses were involved with the shipment.  More specifically, plaintiffs point to the clean bill of lading issued by Mainfreight upon its receipt of the carpets as evidence that the damage had not yet occurred when the shipment arrived at Mainfreight's San Diego warehouse.  Pls.' Decl. Opp'n ¶¶ 23, 25, 29.  However, this argument fails because a bill of lading often only notes the condition of the exterior packing.  Caemint Food, Inc. v. Brasileiro, 647 F.2d 347, 352 (2d Cir. 1981).  "Although a clean bill of lading normally constitutes prima facie evidence that cargo was in good condition at the time of shipment, courts

---

[16] In his declaration, Rose also identifies three other California-based Mainfreight witnesses, who are "familiar with this incident": Sarah Pfeffer, Customer Service Representative in San Diego; Joanne Charles, Claims Supervisor in Los Angeles; and Susannah Beattic, Vice President Operations in Los Angeles. Rose Decl. at 1.

have long recognized that it does not have this probative force
where . . . the shipper seeks to recover for damage to goods
shipped in packages that would have prevented the carrier from
observing the damaged condition had it existed when the goods
were loaded." Id.; see also The Niel Maersk, 91 F.2d 932, 933
(2d Cir. 1937) (holding that a clean bill of lading on a
shipment of sardines was only prima facie evidence that the
external packaging was in good condition and did not necessarily
demonstrate that the sardines contained inside were not
spoiled).  It is certainly possible that the packaging of the
carpets prevented Mainfreight personnel from observing the
interior damage.  Indeed, when Glen Eden received the carpets
about a week after Mainfreight issued the clean bill of lading,
an employee wrote on the bill of lading that the carpets were in
their "original packaging" and had "never been open." See Pls.
Ex. 9.  Thus, Mainfreight's issuance of a clean bill of lading
hardly indicates that the damage occurred after the involvement
of the California-based witnesses.[17]

---

[17] Plaintiffs also argue that these California-based witnesses
are not material because Mainfreight has conceded that the
damage occurred while the carpets were already in its custody.
Plaintiffs point to the November 24, 2008 e-mail from
Mainfreight employee Andrews to ICC employee Kober, which as
described above, stated: "We are not able to determine exactly
where or when the damage occurred.  The damage happened while
the cargo was in the care of our carrier."  Pls.' Ex. 15.
However, Andrews' statement is inherently contradictory, and as
such, it is stretch to say that Mainfreight has conceded

Plaintiffs also claim that the material witnesses are located not in California but rather in New York. Specifically, plaintiffs point to ICC employees Kober and Nuzio and Stark Carpet employees Benis and Meistrich. However, these individuals have limited to no knowledge as to when and where the damage occurred, as evidenced by their inconclusive investigation. See Pls. Exs. 7-11, 13. Although these individuals may certainly have some relevant information, the issue of where and when the damage occurred can more likely be answered by the California-based witnesses described above. Similarly, plaintiffs argue that New York-based F.I.C. employees J. Scott Scherban and Rose DePino are material witnesses because they "may have to offer testimony about the insurance coverage, claim adjustment . . . and payment of the claim." Pls.' Mem. Opp'n at 11. However, there is no evidence in the record that these individuals have any personal knowledge as to when and where the carpet damage occurred.

Finally, plaintiffs contend that Mainfreight employees Nowicki and Andrews are material witnesses. While they may indeed be material, Nowicki and Andrews are in North Carolina,

---

liability. Additionally, as is evident from the record, the investigation into the damage was inconclusive, and Andrews may have had no basis for his statement. Moreover, Andrews' statement is possibly inadmissible hearsay; it is unclear whether it qualifies an admission by a party-opponent under the Federal Rules of Evidence. See Fed. R. Evid. 801(d)(2)(c).

not New York.   Thus, because the majority of the material
witnesses are located in California, the convenience and
attendance of the witnesses strongly weighs in favor of transfer
to the Southern District of California.


### iii. Convenience of the Parties

Plaintiffs concede that this factor is neutral because
"plaintiffs are in New York and defendants are in California."[18]
 Pls.' Mem. in Opp'n at 14.   Plaintiffs are correct that "[t]he
convenience of the parties becomes a neutral factor in the
transfer analysis if transferring venue would merely shift the
inconvenience to the other party."  IDT Domestic Telecom, Inc.
v. Estrella Telecom, Inc., No. 09-CV-10436, 2010 WL 1047648, at
*3 (S.D.N.Y. Mar. 19, 2010).   However, the third-party
defendants in this action, Scripps and Now Express, are both
located in California, which adds some weight to this factor in
favor of transfer.[19]

---

[18]   Despite plaintiffs' statement that "defendants are in
California," plaintiffs also state that Bax is located in
Jamaica, Queens and that Mainfreight is incorporated in New
York.  See Pls. Decl. in Opp'n at ¶¶ 5 and 7.  Thus, it must be
that their statement, "defendants are in California," refers to
the fact that Mainfreight and Bax also have offices and
warehouses in California and that these were the offices and
warehouses involved in the shipment at issue.

[19] It is unclear whether this district has personal jurisdiction
over Scripps or Now Express, both of whom Mainfreight has
impleaded but have not yet appeared.  On the other hand, the

####    iv.    The Locus of Operative Facts

Turning next to the location of events giving rise to the action, it is clear that the damage to the carpets occurred either in California, Georgia or somewhere in between.  In any event, it is undisputed that the damage did not occur in this district.  Although it is not clear that the damage occurred in the Southern District of California, it is also undisputed that the shipment originated there.  Thus, it is, at the very least, possible that the damage at issue in this case occurred there.

As such, this factor weighs in favor of a transfer to California.  See, e.g., Centennial Ins. Co. v. Burlington Air Exp. Inc., No. 97-CV-8512, 1998 WL 323486, at *3 (S.D.N.Y. June 17, 1998) (granting a motion to transfer venue from the Southern District of New York to the Western District of Tennessee when

---

Southern District of California would certainly have personal jurisdiction over all of the parties here, including Scripps and Now Express.  This issue of personal jurisdiction is reason enough to grant defendants' motion to transfer venue.  See Myers, 2010 WL 1992200, at *7 ("The ability to implead a third party is a significant consideration on a motion to transfer."); Posven, C.A. v. Liberty Mut. Ins. Co., 303 F. Supp. 2d 391, 406 (S.D.N.Y. 2004) ("[I]t is well established that the ability to implead a third-party in the proposed transferee forum and thereby resolve related claims in a single action weighs heavily in favor of transfer."); see also Winona Foods, Inc. v. Timothy J. Kennedy, Inc., No. 07-CV-1003, 2008 WL 2570600, at *2 (E.D. Wis. June 26, 2008) (granting transfer of venue where there was no personal jurisdiction over defendants even though venue was technically proper under the Carmack Amendment and noting that the Carmack Amendment's "specific venue provisions are not a substitute for personal jurisdiction — the court must still ensure at the outset that it has the power to compel the defendant to appear in its court").

the damaged shipment at issue never passed through New York but originated in Memphis).

### v.   Forum Familiar with Substantive Law

"Where an action does not involve complex questions of another state's laws, courts in this district accord little weight to this factor on a motion to transfer."  Merkur v. Wyndham Int'l, Inc., No. 00-CV-5843, 2001 WL 477268, at *5 (E.D.N.Y. Mar. 30, 2001).  Here, because plaintiffs bring this action as a violation of federal interstate commerce law, there are no "complex questions of another state's laws." Accordingly, this factor does not weigh heavily in either direction.

Although no single factor in the § 1404(a) analysis is dispositive, defendants have met their burden to demonstrate that transfer is indicated for convenience and in the interests of justice.  In particular, the convenience and attendance of the witnesses strongly weighs in favor of defendants' transfer of venue motion.

## Conclusion

For the foregoing reasons, defendants' motion to transfer venue to the Southern District of California pursuant to 28 U.S.C. § 1404(a) is granted.


Dated: Brooklyn, New York
       September 20, 2010


                              SO ORDERED:

                              _____
                                        /s/
                              David G. Trager
                              United States District Judge